VANDERFORD v. BRAND, Judge.

VANDERFORD v. THE STATE.

1. Where a case has been brought to this court by bill of exceptions complaining of a refusal to grant a new trial to a person convicted of a felony, if the presiding judge grants a supersedeas but declines to admit the accused to bail, whether this court has jurisdiction to issue a writ of mandamus to compel him to do so, *quere*.

2. Where a person who was indicted for the crime of rape was found guilty with a recommendation to mercy, and was sentenced to the penitentiary for twenty years, and thereupon, after refusal of a new trial, filed a bill of exceptions bringing the case to this court, he was not entitled as matter of right to demand that he should be admitted to bail; but whether bail should be allowed him or not was a matter within the sound discretion of the presiding judge.

3. There was no abuse of discretion in refusing to grant bail.

Argued July 16,—Decided July 28, 1906.

Application for admission to bail. Before Judge Brand. Gwinnett superior court. June 16, 1906.

Vanderford was indicted for rape, and on the trial was convicted. The jury recommended him to mercy, and he was sentenced by the court to the penitentiary for the term of twenty years. He made a motion for a new trial, which was overruled, and he presented a bill of exceptions which was certified, and at a later date filed. He applied for and obtained to be issued the writ of habeas corpus, alleging that he was illegally detained without the privilege of giving bail, and he prayed that he be granted the right to do so. The presiding judge, after hearing the application, denied it. Thereupon the applicant applied to this court for a mandamus to compel the judge to admit him to bail. A rule nisi issued and in answer to it the judge denied that the defendant was entitled to bail as a matter of right, and set forth facts tending to show that as matter of discretion the denial was proper. He alleged that he had granted an order superseding the judgment and sentence, but refused to grant the application for bail. The applicant also filed a direct bill of exceptions to the judgment refusing bail.

*J. A. Perry, J. C. Flanigan, M. D. Irwin,* and *John R. Cooper,* for plaintiff in error. *S. J. Tribble, solicitor-general,* contra.

LUMPKIN, J. (After stating the facts.) 1. This court has no original jurisdiction, but is a court alone for the trial and correction of errors. Constitution, article 6, section 2, paragraph 5, Civil Code, § 5836. So. far as material to the present case, the Supreme Court is declared to have authority, "To exercise appellate jurisdiction, and that only, and in no case to hear facts or examine witnesses. . . To grant any writ necessary to carry out any purpose of its organization, or to compel any inferior tribunal or officers thereof to obey its order. . . To punish for contempt . . . ." Civil Code, § 5498. It is in no respect a court of first instance. It may issue writs necessary to carry out the purposes of its organization, and compel obedience to its orders by inferior tribunals or officers, such as mandamus to compel the clerk of the trial court to complete or send up a transcript of the record (Civil Code, § 5538) ; or to compel a judge to sign a bill of exceptions, if he unlawfully refuses to do so (*Taylor* v. *Reese,* 108 *Ga.* 379) ; or to compel the granting of a supersedeas to stay the execution of a judgment in a criminal case while it is pending on bill of exceptions to this court (*Spann* v. *Clark,* 47 *Ga.* 369). This is not an exhaustive statement, but is illustrative of the fact that writs of this character are issued as ancillary to the jurisdiction of this court, and not as original proceedings. In this case, upon the filing of the bill of exceptions, the presiding judge granted a supersedeas. It does not appear how the question of granting or refusing bail is necessarily involved in the consideration and determination of the questions raised by the bill of exceptions, nor why the case can not be as well heard and determined here whether the defendant is in jail or has given bond. It may well be doubted whether this court has any jurisdiction to grant the relief prayed, or whether the defendant has pursued the proper remedy by applying for a mandamus, even if his application for bail had been erroneously refused. The decision in Hudson v. Parker, 156 U. S. 277, is relied on by counsel for the applicant; but the ruling there made was, that, under the acts of Congress conferring certain powers upon the Supreme Court of the United States, and under a rule which had been adopted by that court, one of its Justices had authority to allow a writ of error to a circuit or district court

in a case of conviction for an infamous but not capital crime, and could sign the citation, grant the supersedeas, and order the prisoner, after citation served, to be admitted to bail; and that if the district judge declined so to admit to bail because in his opinion the order was without authority of law, he could be compelled to do so by the Supreme Court by writ of mandamus. An examination of the acts of Congress and of the rule promulgated by that court will show that the situation was entirely different from that before us. Justices Brewer and Brown dissented.

2. But as the applicant has brought the case before us both by this application for mandamus, and also by bill of exceptions, we are not inclined to rest our decision merely on the question above referred to.

At common law the granting or refusing of bail was in all cases a matter which was held to rest in the sound discretion of the court. 2 Hale's Pl. Cr. 129; King v. Portier, 13 Que. K. B. 251, 1 Am. & Eng. Ann. Cases, 10, 12, and note; 3 Enc. Pl. & Pr. 200. And this rule has been generally adopted in those States where the matter has not been made the subject of constitutional or statutory provisions. 3 Am. & Enc. L. (2d ed.) 664. This does not refer to committing magistrates. The exercise of this discretion at common law depended to some extent upon the gravity of the offense, bail being more readily granted in cases involving misdemeanors than in those involving felonies. Prior to the organization of the Supreme Court, it was held by the superior-court judges that they had "a discretionary power (governed by the circumstances of the case) to bail in all cases whatsoever." See *State v. Abbott, R. M. Charlton,* 244, (where the matter is elaborately discussed) ; *State v. Wicks, R. M. Charlton,* 139; *State v. Howell, R. M. Charlton,* 120. In most of the United States the question of the right to bail has been made the subject of constitutional provisions, and the right in such States is controlled by them. 3 Am. & Eng. Enc. L. (2d ed.) 665; 5 Cyc. 68. In this State the only constitutional declaration on the subject is that "Excessive bail shall not be required." Civil Code, §5706. This does not determine any right to bail, or in what cases it exists, but only prohibits excessiveness in amount, where bail is allowed. Turning to the statutes of the State on the subject, we find the following sections bearing upon the point now being considered: Penal Code,

§ 922, with reference to proceedings to commit, provides that, "If bail is tendered and accepted, no regular commitment need be entered, but a simple memorandum of the fact of bail being taken." Section 932 provides that after arrest under a bench warrant "any judicial officer, or the sheriff of the county where the accusation was found, may receive the bail, fix the amount of the bond, and approve the sureties, unless it be a case that is bailable only before some particular officer." Section 933 reads as follows: "Capital offenses are bailable only before a judge of the superior court, and is, in every case, a matter of sound discretion. All other cases are bailable by the committing court." Section 934 reads thus: "No person shall give bail more than twice before trial for the same offense, after presentment or indictment found." It will be observed that all these provisions look to the granting of bail before trial. None of them refer to the giving of bail after conviction. There is a wide difference in the situation of a person accused of a crime before and after he is convicted. Before he is convicted, he is detained in custody or required to give bail to insure his presence at the trial, and to abide its results. While in some jurisdictions it is held that the finding of a bill of indictment raises a presumption against him, in Georgia the presumption of innocence remains with him even through the trial. But after he has been tried and convicted, there is no longer any presumption that he is innocent. On the contrary, if he seeks to obtain a new trial, the presumption is in favor of the legality of the conviction, and the burden of showing error is upon him.

In *Corbett* v. *State*, 24 *Ga.* 391, the accused was found guilty of forgery. Pending a motion in arrest of judgment he moved the court to be admitted to bail. This was refused by the presiding judge, who held that after conviction the case was not bailable. The Supreme Court held that "The superior courts in this State have the same power, in relation to bail in criminal cases, as the court of King's Bench in England." In the opinion it was said: "In short, the law is this: The court has the *power* to grant bail in all bailable cases, until the accused is in execution. But this discretion must be exercised or refused in each particular case, according to the facts which attend it. The whole subject is under the control of the court." This was a distinct ruling that after conviction of a felony, though not capital in its character, the

matter of admitting to bail was not a right which the defendant could demand, but was within the sound discretion of the court. Instances (by way of illustration) in which a court would admit to bail were given in the opinion, where it was said: "If one be convicted of felony upon evidence by which it plainly appears to the court that he is not guilty of the crime, or where the prisoner may be in danger of losing his life, either by famine or dangerous distemper, unless he be bailed, in such cases the authorities are that the court will admit to bail after verdict." While bail is more freely granted at the present time than in the earlier days of the common law, yet a person convicted of a felony is in no situation to demand as a right that he be set free on bond, nor will this be done where the circumstances are such as to indicate that it would be improper. Thus, if the evidence shows plainly the commission of an infamous crime, and the presiding judge has reason to believe that the defendant will not be present to abide the sentence of the court if the judgment should be affirmed, the accused has no arbitrary right to demand that he should be set free on a reasonable bond, so that he may run away. In other jurisdictions the decisions are not altogether in harmony as to admission to bail pending an appeal or writ of error. Sec 5 Cyc. 72, 73. Perhaps some of the diversity in view may be explained by differences in the statutes or constitutions of the different States. In 3 Am. & Eng. Enc. L. (2d ed.) 675, it is said: "In the United States, after conviction, no constitutional right to bail exists, and the granting of bail rests in the sound discretion of the court. In cases of misdemeanor this discretion is exercised freely in its favor, but in felonies bail is allowed with great caution, and only where the peculiar circumstances of the case render it right and proper."

It is contended that section 1077 of the Penal Code is controlling. It reads as follows: "The bill of exceptions thus filed shall operate as a *supersedeas*, upon the plaintiff in error complying with the following terms: Where the offense is bailable, the defendant shall enter into a recognizance before the clerk, with security to be approved by him, in a sum to be fixed by the presiding judge, conditioned for the personal appearance of such defendant, to abide the final order, judgment, or sentence of said court. If the offense is not bailable, the judge shall order a *supersedeas* at the time of filing the bill of exceptions. If the party is unable from his

poverty to give the recognizance, the judge shall order a *supersedeas.* upon the filing of an affidavit as provided in civil cases, but the defendant shall not be set at liberty without the recognizance." This section is taken from the original act establishing the Supreme Court. Cobb's Dig. 449. The difference between the provisions of that act and the section as it now stands is that in the former it was said that if the offense be not bailable, or if the party be sentenced to imprisonment in the penitentiary, and be unable to give the security as required, the judge of the superior court "may order a supersedeas at the time of certifying the bill of exceptions, while as codified the word "shall" is used instead of "may." This portion of the act was dealing principally with the subject of supersedeas. It did not declare that in all cases, or in specified classes of cases, bail should be granted, but referred to giving bond in cases which were bailable, and also granting supersedeas in cases which were not bailable, or where the defendant could not give the bond. It left the question of what were bailable cases to stand as it was before; and we have seen that after conviction cases were bailable or not in the sound discretion of the court. The expression "where the offense is bailable," as used in this act, therefore, meant where it was bailable in the sound discretion of the presiding judge. This law stood upon the statute book when the case of *Corbett* v. *State,* supra, was decided in 1858. Unless it be construed as just stated, it is in direct conflict with that decision. We are not prepared to hold that the statute intended to create a new test of what offenses were bailable after conviction, or that the Supreme Court in the case referred to decided directly in the teeth of such statute, though it was not mentioned in the opinion.

Thus the question of admitting the defendant to bail after his conviction rested in the sound discretion of the presiding judge. His discretion was not abused, and will not be reversed. The petition praying for the writ of habeas corpus, and that the accused be allowed to give bail, alleges that his detention is contrary to the constitution of the State of Georgia, and that of the United States. It does not point out what particular provisions of those instruments are violated.

*Application for mandamus dismissed. In the second case the judgment is affirmed. All the Justices concur, except Fish, C. J., absent.*