## 37787. LADSON v. THE STATE.

GREGORY, Justice.

The defendant, Charles Edward Ladson, was indicted, along with John Ellis Starling, on nine counts of burglary and three counts of theft by taking by a Ware County Grand Jury. The trial court granted Ladson's motion to sever parties and ordered separate trials for Ladson and Starling.

At Ladson's trial Starling testified that Ladson had assisted him in burglarizing a number of the residences set out in the indictment. Starling testified that, on other occasions, Ladson would tell Starling what he wanted stolen, Starling would then steal it and turn it over to Ladson for a fee; Starling's testimony was that Ladson instructed him to steal "color T.V.'s, microwaves, guns or anything of value." Starling testified that he continued to "work for" Ladson in this capacity for two and one-half years because Ladson had threatened

not only his life, but the lives of Starling's family if Starling attempted to "get out of" the operation. In support of its case, the State introduced into evidence two microwave ovens and a television set found in Ladson's possession. The serial numbers on these three items matched the serial numbers of two microwave ovens and one television set stolen in three of the burglaries for which Ladson had been indicted.

At the close of the State's case the trial court granted Ladson's motions for directed verdict as to all three theft by taking counts and to five counts of burglary on the ground that the State had failed to corroborate Starling's testimony.

Ladson testified at trial that Starling had offered, at various times, to sell him merchandise including the two microwave ovens and television introduced into evidence. Ladson testified that he had purchased these items and many others from Starling because Starling needed money. Ladson stated that he had neither played a part in any of the burglaries in question nor was he ever aware that any of the merchandise Starling sold him had been stolen.

The jury acquitted Ladson on one count of burglary and convicted him of the three counts of burglary in which the microwave ovens and television set had been stolen. The trial court sentenced Ladson to three twenty-year sentences in the penitentiary, to run concurrently.

(1) Defendant first argues that Code Ann. § 26-1601 (Ga. L. 1978, p. 236), the burglary statute under which he was convicted, is unconstitutional because it violates Art. III, Sec. VII, Par. IV of the Georgia Constitution (Code Ann. § 2-1304). This section of the Constitution provides: "No law shall pass which refers to more than one subject matter or contains matter different from what is expressed in the title thereof."

The caption of Georgia Laws 1978, p. 236 of which defendant complains, states as its purpose "[t]o amend Code Section 26-1601, relating to the crime of burglary, so as to provide for periods of mandatory imprisonment upon second and third convictions of said offense; to repeal conflicting laws; and for other purposes."

Former Code Ann. § 26-1601, Ga. L. 1968, pp. 1249, 1287; Ga. L. 1977, p. 895, set out the elements of the offense of burglary and provided for punishment by imprisonment of not less than one nor more than twenty years. Georgia Laws 1978, p. 236 retained the earlier definition of burglary with the singular exception of deleting "aircraft" from the list of structures which can be burglarized. Georgia Laws 1978, p. 236, added to Code Ann. § 26-1601 a section providing for periods of mandatory imprisonment upon a second or third conviction of burglary.

Defendant argues that the language in the caption of former Code Ann. § 26-1601, Ga. L. 1978, p. 236,[1] stating as the purpose of the Act "to amend Code Section 26-1601 . . . so as to provide for mandatory imprisonment upon second and third convictions of said offense," "expressly and specifically limited said act to providing only such mandatory periods of imprisonment." Since this language does not encompass an amendment to the definition of the crime of burglary, defendant posits, the act "contains matter different from what is expressed in the title thereof" and thus is in violation of the Constitution. Code Ann. § 2-1304.

We find it unnecessary to reach the question of whether defendant, not having been charged with burglarizing an aircraft, has standing to attack the statute since we base our decision here on other grounds.

We emphasize that the legislature enacted Georgia Laws 1978, p. 236 "to amend Code Section 26-1601 *relating to the crime of burglary,*" and to provide for mandatory imprisonment upon subsequent convictions of *"said offense."* (Emphasis supplied.) Further the caption of the Act contained the broad language "and for other purposes."

We have recently held that "[i]n interpreting Code Ann· § 2-1304, this court has consistently noted that 'It was never intended that the substance of the entire act should be set forth in the caption. It was not contemplated that every detail stated in the body should be mentioned in the caption. If what follows after the enacting clause is definitely related to what is expressed in the title, has a natural connection, and relates to the main object of legislation, and is not in conflict therewith, there is no infringement of the constitutional inhibition.' *Cady v. Jardine,* 185 Ga. 9, 10-11 (193 SE 869) (1937)." *Frazer v. City of Albany,* 245 Ga. 399, 401 (265 SE2d 581) (1980). The constitution does not require that the title of an act should contain a synopsis of the law, but that the act should contain no matter variant from the title. If the title is descriptive generally of the purposes of the act, it is sufficient, and it is not necessary that it should particularize the several provisions contained in the body of the act. *Howell v. State,* 71 Ga. 224 (1883).

"As held in Martin v. Broach, 6 Ga. 21 (2) (1849), 'Where the title specifies some of the objects for which the Statute was passed, and contains this general clause — 'And for other purposes therein contained,' portions of the Act not specially indicated in the title, are,

---

[1] This section was again amended by the General Assembly in 1980. See Georgia Laws 1980, p. 770.

nevertheless, good, under this general clause.' " *Devier v. State,* 247 Ga. 635, 636 (277 SE2d 729) (1981).

It is clear that the definition of "burglary" in Georgia Laws 1978, p. 236 "relates to the main object of [the] legislation," contains "no matter variant from the title," and bears "a natural connection" to the matter contained in the enacting clause. We conclude that this Act does not violate Code Ann. § 2-1304.

(2) Defendant argues that the trial court erred in denying his motion to suppress the introduction in evidence of a microwave oven found at his former place of employment. The oven had been stolen from one of the mobile homes defendant was accused of burglarizing.

Defendant contends that since the property was found at a place which was neither owned nor controlled by him, and since many others had access to the oven at this place, this evidence should have been suppressed at trial. Defendant's position is that, absent a showing that he was in exclusive possession of the oven, evidence that he had access to the microwave "is not sufficient to support a conviction."

There is no constitutional right to suppress evidence solely on the ground that others have access to it. Defendant has not asserted a violation of any interest which is protected by the Constitution. The trial court did not err in denying defendant's motion to suppress.

(3) At trial the State introduced two stereo speakers into evidence which had allegedly been taken by defendant during one of the burglaries. The victim of the burglary testified that while the speakers in evidence were "similar" to hers, they did not belong to her. Thereafter, defendant made a motion for mistrial. Out of the presence of the jury the trial court denied the motion, but instructed the jury "not [to] consider any evidence, testimony or reference" to the speakers. The State then withdrew the speakers from evidence. Defendant renewed his motion for mistrial on the ground that the instructions were insufficient. The trial court denied the second motion and again instructed the jury to disregard any reference to the speakers.

Relying on *Hess v. State,* 132 Ga. App. 26 (207 SE2d 580) (1974), defendant argues that the introduction of evidence unconnected to him was so harmful as to require a new trial. In *Hess,* the victim of the burglary was permitted to testify that over forty items were missing from her house. None of these items had been listed in the indictment and the State had introduced no evidence, either circumstantial or direct to link the defendants with any of them. Concluding that the testimony was "irrelevant and inadmissible," the Court of Appeals determined that defendants were entitled to a new trial.

Unlike the situation in *Hess* we find that the trial court in this case acted promptly and properly in twice cautioning the jury to disregard any testimony or reference to the speakers and in instructing the State to withdraw the speakers from evidence. Under these circumstances we find that the trial court did not err in overruling defendant's motion for mistrial.

(4) On cross-examination of Ellis Starling, defendant asked, "Didn't you steal seven hundred and something dollars from [Ella Mae Newman] while you were living with her?" The State objected that this was not the proper way to impeach a witness. Defendant responded that he was not attempting to impeach the witness, but that his purpose in asking the question was to show motive—"that [Starling] was stealing just out of pure greed, as he always had stolen out of pure greed." The trial court sustained the State's objection.

Defendant argues that the trial court erred in not permitting him to show that Starling did not steal at the insistence of, or out of fear of, the defendant as he claimed, but that Starling stole out of self-interest to "supplement his income."

We agree with the State that defendant's question, for purposes of impeachment, is not the proper way to prove the commission of a prior criminal act. See *Timberlake v. State,* 246 Ga. 488 (6) (271 SE2d 792) (1980). However, the question was asked for a purpose other than to impeach the witness.

As to Counts 1 and 2 of the indictment, Starling testified that the defendant had personally assisted him in burglarizing the homes of Douglas Carroll and Doyle Smith, respectively. As to Count 10 of the indictment, Starling testified that Ladson had instructed him to burglarize the home of Marie Delk, and that he had complied out of fear of the defendant. Whereas, Ladson testified he gave no such instruction, and contended Starling acted independently. The defendant was convicted of all three counts.

Certainly as to Count 10 of the indictment a central issue was whether Starling was carrying out the instructions of the defendant or whether Starling was acting independently. Therefore, as to Count 10, Starling's motives were in issue and the defendant should have been permitted to ask the question. We find that the trial court erred in sustaining the State's objection.

(5) Defendant was convicted of two separate counts of burglary in which microwave ovens were taken. He was convicted of one count of burglary in which a television, among other items, was taken. One microwave oven and television set were recovered from defendant's home; the other microwave oven, which at trial defendant admitted owning, was recovered from his place of work. Defendant argues that possession of these stolen items alone is, as a matter of law,

insufficient to corroborate Starling's testimony. Defendant argues that "when possession is the sole corroborating evidence there must be proof of recent possession. Otherwise the accomplice's testimony is wholly uncorroborated." Therefore, he contends, the trial court erred in overruling his motions for directed verdict.

Under Code Ann. § 38-121 "the testimony of an accomplice used to convict the accused of a crime must be supported by independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime . . ." *Alderman v. State,* 241 Ga. 496, 510 (246 SE2d 642) (1978); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976). "The sufficiency of evidence corroborating the testimony of an accomplice is a matter for the jury, and so long as the verdict is supported by 'slight evidence' of corroboration connecting the defendant with the crime, this court will not say that the evidence did not authorize the verdict. *Lindsey v. State,* 227 Ga. 48, 52 (178 SE 2d 848) (1970)." *Alderman,* supra, at 510.

We know of no authority which, as a matter of law, requires that proof of possession of goods taken in a burglary must be "recent possession" in order for this evidence to corroborate an accomplice's testimony.[2] In any event, defendant's own trial testimony indicates that he came into possession of the two microwave ovens and the television set "recently" after the occurrence of the burglaries, allegedly because he purchased them "recently" after the burglaries from Starling. The mere fact that he was not *apprehended* with these items in his possession until some fourteen months after the burglaries occurred would not in itself bar the jury from considering these items as evidence which would connect the defendant to the crime.

We cannot say that there was "no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom, . . . demand[ed] a verdict of acquittal." Code Ann. § 27-1802. Neither can we say that the evidence presented did not authorize the verdict. *Alderman,* supra. Therefore, the trial court did not err in denying defendant's motions for directed verdict. Enumerations of error 5-10 are without merit.

(6) During closing argument the prosecutor stated to the jury that the defendant "wouldn't hesitate to lie to you or nobody [sic] to get out of [a conviction]." Defense counsel moved for a mistrial. The trial court overruled the motion, but instructed the prosecutor to "argue the evidence and the reasonable deductions therefrom."

---

[2] Perhaps defendant has reference to the presumption arising out of recent unexplained possession of stolen goods.

"While counsel should not be permitted in argument to state facts which are not in evidence, it is permissible to draw deductions from the evidence, and the fact that the deductions may be illogical, unreasonable or even absurd is a matter for reply by adverse counsel and not rebuke by the court." *Owens v. State,* 120 Ga. 209, 210 (47 SE 545) (1904); *Johnson v. State,* 150 Ga. App. 405 (258 SE2d 22) (1979).

The record indicates that in making the challenged remark the prosecutor was responding to defense counsel's own statement in closing argument that "Ellis Starling has a good reason to lie — he wants to get out of this." Given the conflicts in the defendant's and Starling's testimony, it is not illogical to draw the deduction that one of them was not telling the truth. See also, *Clark v. State,* 146 Ga. App. 697 (3) (247 SE2d 221) (1978). The trial court did not err in denying defendant's motion for mistrial.

(7) Defendant also argues that the trial court erred in denying his motion for mistrial made when the prosecutor improperly referred to the State's inability to produce all the items taken in one of the burglaries charged in the indictment. Subsequently the trial court instructed the jury that they were not to consider counsel's closing remarks as evidence and that they were not to consider "any remarks with reference to evidence that has not been produced in . . . court."

We conclude that the trial court properly complied with the mandates of Code Ann. § 81-1009 in rebuking the prosecutor and in administering "all needful and proper instructions to the jury [to] endeavor to remove the improper impression from their minds." The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

(8) The defendant filed six written requests to charge on "recent unexplained possession" of stolen goods. While this theory is most often relied on by the State in criminal cases as evidence of a defendant's guilt, we note that in this case the defendant, rather than the State, injected the theory into the trial. Most of the defendant's requests to charge were not correct statements of the law and the trial court properly refused to charge them. The trial court did, however, give a lengthy and correct statement of the law of "recent un-explained possession" in its final instructions, incorporating the substance of defendant's requests to charge. We find his enumeration of error in this regard to be without merit.

(9) Defendant argues that the trial court erred in failing to charge the jury that "when an accomplice testifies in behalf of the State, that his testimony is to be received with caution by the jury." The trial court charged fully on the weight and credibility to be given to the testimony of any witness, the law regarding accomplices and

that the weight to be given to an accomplice's testimony is a question for the jury.

While we recognize that under the Federal Rules of Criminal Procedure, it is "plain error" for the trial court to fail to charge that an accomplice's testimony should be received with caution where such testimony comprises the only evidence against the accused, Rule 52(b) FRCP, in Georgia a defendant may not be convicted on the uncorroborated testimony of an accomplice. Because of the added requirement of corroboration the courts of this state have not endorsed the Federal rule. See, *Tamplin v. State,* 235 Ga. 20, 23 (218 SE2d 779) (1975); *Haas v. State,* 146 Ga. App. 729, 733 (247 SE2d 507) (1978), cert. denied 440 U. S. 922. We find no error.

(10) Defendant argues that the trial court erred in failing to charge the jury that "even though they believed from the evidence that [defendant] was guilty of theft by receiving stolen property, they would not be authorized to convict the defendant of burglary." Defendant's argument is grounded in the fact that Starling testified at trial to selling certain items he stole to the defendant and that, under this evidence the jury might implicitly find the defendant guilty of theft by receiving, and consequently convict him of burglary. Defendant was not charged with theft by receiving stolen property. Code Ann. § 26-1806. Starling's testimony tended to prove that the defendant was guilty of burglary rather than theft by receiving stolen property. Furthermore, the trial court charged the jury that if they did not find that the State had proved beyond a reasonable doubt that the defendant committed the crimes of burglary, the law required them to return a verdict of not guilty. We find this enumeration of error to be without merit.

(11) Defendant contends that the trial court erred in allowing the jury to determine whether or not Starling was an accomplice. Defendant argues that he was harmed by the jury's "confusion" resulting from the trial court's failure to charge the jury that Starling was an accomplice. However, under the evidence presented in this case, had the trial court instructed the jury that Starling was an accomplice of the defendant, this would have been tantamount to a charge that the defendant, as a matter of law, was a participant in the crime. Defendant defended on the ground that he had not participated in any of the burglaries, but had simply purchased the stolen items from Starling, not knowing them to have been stolen, because Starling needed the money.

"To be accomplices of each other, both the defendant and the State's witness must have been involved in the criminal enterprise. One cannot be the "accomplice" of an innocent man. It therefore constitutes an expression of opinion by the court as to the guilt of the

accused to instruct the jury that a witness who testified as to the defendant's guilt and admitted his participation in the crime would be an accomplice of the accused." *Millwood v. State,* 102 Ga. App. 180 (115 SE2d 829) (1960).

We find that the trial court properly refused to charge the jury that Starling was an accomplice.

(12) After defendant's motions for directed verdict as to eight counts of the indictment were granted, the indictment was recast to reflect only the four remaining counts. The trial court then instructed the jury "you are not concerned with all the counts in the indictment at this time. You are concerned with Counts One, Two, Ten and Twelve, only. Four counts." During closing argument defense counsel informed the jury that eight of the charges against the defendant had been dropped because the State's "evidence was not even sufficient to submit [them] for your consideration." After closing arguments the trial court read the four counts of the indictment to the jury and cautioned them that they were to consider only the evidence presented on these counts. No objections were made to the instructions by the trial court. After the jury had deliberated for over five hours, defendant moved for a mistrial on the ground that the "jury could not disabuse its mind of . . . the testimony" on the eight counts on which directed verdicts of acquittal had been granted. Defendant argued that he was, thus, deprived of his right to a fair trial.

The granting or refusal to grant a motion for mistrial lies within the sound discretion of the trial court and this discretion will not be interfered with unless the grant of a mistrial is essential to preserve the right to a fair trial. *Woods v. State,* 233 Ga. 495, 498 (212 SE2d 322) (1975); *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977); *Sims v. State,* 243 Ga. 83 (252 SE2d 501) (1979); *Baker v. State,* 245 Ga. 657 (266 SE2d 477) (1980).

Under the circumstances of this case, we cannot say that the trial court abused its discretion in denying defendant's motion for mistrial or that the defendant was deprived of his right to a fair trial.

*Thrash v. State,* 158 Ga. App. 94 (283 SE2d 611) (1981), cited by defendant, is distinguishable. There the defendant was on trial for criminal damage to property. During the course of the trial it became known that one juror had heard a rumor that the defendant had recently been found guilty of arson and had so informed the other jurors. In fact, the defendant had been acquitted of the arson charge. Finding that the "injection into the case of [a] matter not properly before the jury" deprived the defendant of a fair trial, the Court of Appeals concluded that the trial court erred in denying his motion for mistrial.

We find this enumeration of error to be without merit.

(13) Because of our holding in Division (4) of this opinion, the defendant is entitled to a new trial as to Count 10 of the indictment.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Hill, P. J., who concurs specially, and Weltner, J., not participating.*

DECIDED NOVEMBER 13, 1981.

*Alva J. Hopkins III, Willis H. Blacknall III, Jack J. Helms,* for appellant.

*Gibson, McGee, Blount & Jackson, Stephen L. Jackson,* for appellee.

HILL, Presiding Justice, concurring specially.

The defendant complains that Ga. L. 1978, p. 236, is unconstitutional as containing matter different from what is expressed in the title of that act, Code Ann. § 2-1304, in that the act deleted the word "aircraft" without reference to this deletion in the title. Yet this defendant was not charged with burglary of an aircraft (and if he had been he would be relying on the deletion rather than attacking it). I would hold that this defendant lacks standing to challenge the constitutionality of the deletion of the word "aircraft" under Code Ann. § 2-1304. We ought not grant every litigant a roving commission to review each act involved in a case, searching for some discrepancy between the title and text which does not affect the rights of the litigant. See *State v. Raybon,* 242 Ga. 858, 862 (252 SE2d 417) (1979). I therefore concur in the judgment as to Division 1.